**FILED**

**MARCH 4, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| V.I.P. SPORTS MARKETING, INC., an Illinois corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>JOHN NUSSBAUMER, a New York citizen, )<br><br>Defendant. ) | No.<br><br>**08 C 1307**<br><br>**JUDGE COAR**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR BREACH OF
## FIDUCIARY DUTY AND DECLARATORY JUDGMENT

Plaintiff V.I.P. Sports Marketing, Inc. ("VIP"), by its attorneys, Bell, Boyd & Lloyd LLP, complains of Defendant John Nussbaumer ("Nussbaumer") by stating as follows:

### NATURE OF ACTION AND INTRODUCTION

1.     This is a claim for relief arising from Nussbaumer's serial breaches of fiduciary duty to his former employer, VIP. For nearly a year, while still employed with VIP, Nussbaumer worked for a competing company, utilizing VIP resources to attract VIP clients or potential clients to the competing company. Indeed, upon announcing his resignation from VIP, Nussbaumer then attempted to convert VIP assets and/or resources apparently for use by a competing company. Nussbaumer also, shortly before resigning from VIP, began to concoct a claim that he has not been paid certain commissions on VIP sales to clients which were never made by Nussbaumer. In fact, Nussbaumer had been paid all commissions to which he was entitled.

449536/E/1

## Parties

2.      VIP is an Illinois corporation with its principal place of business at 811 West Evergreen Street, Suite 305, Chicago, Illinois, 60622.

3.      Nussbaumer is a citizen of New York who resides at 1104 Underhill Road, East Aurora, New York, 14052.

## Jurisdiction and Venue

4.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because VIP and Nussbaumer are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to VIP's claim occurred in this District.

## Facts

### Nussbaumer's Unlawful Competition with VIP While Employed There

6.      VIP is a sports marketing company which hosts a variety of hospitality events at and around major sporting competitions such as the Super Bowl, the Masters and the Kentucky Derby.  On numerous occasions, VIP has retained sports personalities to entertain guests at events, including personalities from the Entertainment & Sports Programming Network ("ESPN").

7.      In or around July of 2002, VIP hired Nussbaumer as a salesperson to work in VIP's Chicago offices.  Nussbaumer's responsibilities included attracting new customers to purchase tickets to attend VIP hospitality events and to cultivate relationships with persons in the sports and sports media industries.  As an accommodation to Nussbaumer, in or around late 2004, Nussbaumer moved from Chicago to Buffalo, New York and continued working for VIP. In his position as the only salesperson in the New York area, VIP entrusted Nussbaumer with

significant responsibility to work to advance VIP's business interests in that area. On February 15, 2008, Nussbaumer informed VIP that he was resigning from the company.

8.    VIP recently learned that as early as March of 2007, Nussbaumer began working for a competing business, Wide Right Sports ("Wide Right"). Wide Right promotes itself as providing marketing concepts with the use of sports personalities that the company represents. Specifically, Wide Right advertises that it represents a host of ESPN personalities who appear at corporate events or lend their celebrity to other promotional endeavors.

9.    VIP has discovered a number of email correspondences between Nussbaumer at his VIP work email address and Wide Right founder Mark Preisler and others from March of 2007 through the end of 2007 in which Nussbaumer was, among other things: (1) involved with the marketing of numerous special events, many involving ESPN personalities, to VIP clients such as Coke and Adidas and prospective clients such as Wal-Mart, Men's Health Magazine and Pepsi; (2) drafting promotional materials for Wide Right; (3) assisting with the development of the Wide Right web site. Numerous other emails have been deleted by Nussbaumer and, on information and belief, the recovery of these emails will show additional wrongful competitive activities by Nussbaumer.

10.    Nussbaumer's improper competitive activities served to damage VIP in that sales and/or client relationships which Nussbaumer could have been developing for VIP for the period of the breach were instead directed to Wide Right. For example, Nussbaumer's activities with Wide Right focused on marketing to large companies such as Coke and Wal-Mart, companies for which Nussbaumer should have instead been trying to sell for VIP. In addition, relationships with ESPN personalities were being developed during this time for Wide Right, when

Nussbaumer could have been devoting his efforts to develop such beneficial relationships for VIP.

11.     Furthermore, Nussbaumer's time and efforts spent working for Wide Right rather than working for VIP, while utilizing VIP resources and on VIP time, resulted in decreased sales and revenue for VIP as a whole. Nussbaumer's sales figures for 2007 were quite poor, reflecting that he spent substantial time that year working for Wide Right rather than VIP.

12.     After announcing his resignation, Nussbaumer attempted to convert assets and/or resources of VIP for use by a competing company. For example, Nussbaumer called VIP's phone and internet provider for the New York office and improperly requested that the phone and internet service be changed to TSE Sports and Entertainment, another company that competes against VIP. The change of service due to Nussbaumer's improper actions forced VIP to cancel the service and incur over a thousand dollars in charges for doing so.

### Nussbaumer's Commissions and Defamation Claims

13.     During the time Nussbaumer worked at the VIP Chicago offices from 2002 through 2004, VIP sold certain hospitality packages to VIP clients York International Unitary Products Group ("York") and Dade Behring Holdings, Inc. ("Dade Behring"). Nussbaumer **never** made any sales to either York or Dade Behring, however, while at the Chicago or New York office.

14.     Instead, other VIP representatives made sales to York and Dade Behring. In certain instances, Nussbaumer was allowed to receive a commission on certain sales as a courtesy. However, with regard to York, Nussbaumer was repeatedly informed that after Johnson Controls acquired York, he was not entitled to any commissions as the client "York" no longer existed, and other VIP personnel were responsible for sales to Johnson Controls. With

449536/E/1                                          4

regard to Dade Behring, Nussbaumer was repeatedly informed that he was not entitled to any commissions other than one he was provided for a 2005 sale made by other VIP personnel because Nussbaumer was not responsible for generating any of the revenues from these sales. Nussbaumer consented and acquiesced to the fact that he would not be paid commissions on these sales on each and every occasion when the subject arose.

15.    Indeed, it was not until shortly before resigning from VIP that Nussbaumer sent VIP principal Alex Pramenko an email inquiring as to whether Nussbaumer would be getting paid on Dade Behring and Johnson Controls sales on a going forward basis.

16.    Nussbaumer knew at the time of his email – as he had been planning to leave VIP for nearly one year – that he would not be continuing to work for VIP.  The email correspondence was sent in an effort to lure VIP into making some representation that Nussbaumer could declare binding on the company.

17.    Pramenko responded to Nussbaumer by informing him several times, as he had in the past, that Nussbaumer was owed no compensation for Dade Behring and Johnson Controls contracts where he was not the salesperson responsible for closing those deals.

18.    Subsequently, both Nussbaumer and his counsel have demanded that VIP pay Nussbaumer monies for the commissions and other compensation allegedly owing to him.  In addition, Nussbaumer's counsel demanded monies based on the allegation that VIP defamed Nussbaumer by assertedly claiming that: (1) Nussbaumer was fired; (2) Nussbaumer wrongfully solicited VIP's clients for a competing company; and (3) Nussbaumer had been working for another company while employed by VIP.  The demand for monies from VIP was in excess of the minimum amount for diversity jurisdiction under 28 U.S.C. § 1332(a).

19.    VIP denies that Nussbaumer is entitled to any commissions or other compensation for VIP sales to Dade Behring and Johnson Controls that Nussbaumer had no involvement in, and denies that it defamed Nussbaumer in any way.

## Count I

## BREACH OF FIDUCIARY DUTY

20.    VIP adopts and incorporates by reference all allegations contained in paragraphs 1 though 19 above.

21.    Nussbaumer, as an employee of VIP, owed fiduciary duties, including the duties of loyalty and good faith to VIP, such that Nussbaumer was required to expend his efforts to advance the business interests of VIP, and to refrain from acting in competition with VIP.

22.    Nussbaumer breached the fiduciary duties of loyalty and good faith he owed to VIP by working for a competitor of VIP on VIP's time, by diverting opportunities to a competitor, and using VIP resources to, among other things:

      a.    Market numerous special events, many involving ESPN personalities, to companies such as Coke, Adidas, Wal-Mart, Men's Health Magazine and Pepsi;

      b.    Draft promotional materials for Wide Right; and

      c.    Assist with the development of the Wide Right web site.

23.    Nussbaumer's breach of duties served to damage VIP in that sales and/or client relationships which Nussbaumer could have attained for VIP for the period of the breach were instead diverted to Wide Right.  In addition, Nussbaumer's time and efforts spent working for Wide Right rather than working for VIP resulted in decreased sales and revenue for VIP.

449536/E/1                                                    6

24. Nussbaumer's ongoing breach of fiduciary duties to VIP also mandates the disgorgement of all compensation, including wages and commissions, that Nussbaumer received during the period of his breach of fiduciary duties.

## Count II

## DECLARATORY JUDGMENT

25. VIP adopts and incorporates by reference all allegations contained in paragraphs 1 though 19 above.

26. There exists an actual controversy between VIP and Nussbaumer in that VIP maintains that: (1) VIP owed Nussbaumer no commissions or other compensation for contracts with Dade Behring and/or Johnson Controls where Nussbaumer was not the salesperson responsible for consummating the transaction; and (2) Nussbaumer has made a written demand for commissions.

27. A declaratory judgment in this action will serve a useful purpose in clarifying and establishing the respective rights and obligations of the parties with respect to the payment of commissions, and will terminate the controversy.

**WHEREFORE,** VIP prays for the following relief:

(A) Compensatory and punitive damages in an amount to be determined at trial for Nussbaumer's breaches of fiduciary duty;

(B) An order requiring Nussbaumer to disgorge all income, compensation, commissions and other expenses and benefits he received from VIP during the period he breached his fiduciary duties and duties of loyalty;

(C) An accounting and constructive trust for any monies improperly attained through the usurpation of a corporate opportunity for VIP; and

(D) Any such further and other relief as the court may deem just and proper.

449536/E/1

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims that are properly tried to a jury.


Dated: March 4, 2008

                              V.I.P. SPORTS MARKETING, INC.,
                              Plaintiff,


                              By:_____/s/ Jeffrey T. Petersen_____
                                    One of its Attorneys

Jeffrey T. Petersen
Margaret C. Curtiss
Bell, Boyd & Lloyd LLP
Three First National Plaza
70 W. Madison Street
Suite 3100
Chicago, Illinois  60602
312.372.1121

449536/E/1                    8